Nos. 15-55649, 15-55675 and 15-56137
_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

DONALD WAKEFIELD,

Plaintiff/Appellant/Cross-Appellee

v.

IGOR OLENICOFF and
OLEN PROPERTIES CORP.,

Defendants/Appellees/Cross-Appellants

_____

Appeal from the Orders of the United States District Court
for the Central District of California
Honorable Andrew Guilford, District Judge, Presiding
D.C. No. 8:12-cv-02077 AG RNB
_____

**THIRD BRIEF ON CROSS-APPEAL**

GENE J. BROCKLAND
BRIAN M. WACKER
HERZOG CREBS LLP
100 North Broadway, 14th Floor
St. Louis, MO 63102
Telephone: (314) 231-6700

MICHAEL D. KUZNETSKY
KUZNETSKY LAW GROUP, P.C.
6565 Sunset Blvd., Suite 311
Hollywood, CA 90028
Telephone: (818) 753-2450

Attorneys for Plaintiff/Appellant/
Cross-Appellee
DONALD WAKEFIELD

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES .............................................................. iv

I.     SUMMARY OF ARGUMENT ............................................... 1

II.    SUPPLEMENTAL STATEMENTS................................... 2

    A.    SUPPLEMENTAL STATEMENT OF EVIDENCE PRESENTED ........................................................ 2

    B.    SUPPLEMENTAL STATEMENT OF PROCEDURAL HISTORY ............................................................ 3

III.    LEGAL ARGUMENT .......................................................... 4

    A.    THE DISTRICT COURT PROPERLY RELIED UPON THE JURY'S FINDINGS AND CONCLUSIONS OF LAW IN ISSUING ITS PERMANENT INJUNCTION ENJOINING THE OLEN PARTIES FROM CONTINUING TO INFRINGE WAKEFIELD'S COPYRIGHT AND ORDERING THAT THE INFRINGING COPIES BE DESTROYED................................. 6

        1.    The District Court correctly identified and applied the *eBay* factors.................................................. 9

            a.    Wakefield suffered, and continues to suffer, irreparable harm and his remedies at law are inadequate to compensate for the Olen Parties' continued infringement ......................................... 9

            i.    Injunctive relief is designed to prevent and restrain future harm; proof of past monetary damages is not required for injunctive relief under the Copyright Act .......................... 13

i

ii.     The connection between the Olen Parties' continued infringement and the threat to Wakefield's reputation and goodwill is undisputed and requires injunctive relief. ............... 15

iii.     The Olen Parties' conjecture as to the District Court's motivation is meritless. ............................ 17

b.     The balance of hardships overwhelmingly favors Wakefield ...................................................... 19

c.     The public interest is only served by enforcement of copyright law and destruction of the infringing pieces……………………………………………………20

B.     THE DISTRICT COURT PROPERLY DENIED THE OLEN PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW BECAUSE NONE OF WAKEFIELD'S CLAIMS WERE BARRED BY THE STATUTE OF LIMITATIONS ............................................................ 22

1.     The statute of limitations does not bar Wakefield's claims as to any of the infringing works ......................... 22

2.     The "Injury Rule" for accrual of copyright claims has been rejected by the Ninth Circuit and other Circuits in favor of the "Discovery Rule." .................................... 26

C.     THE DISTRICT COURT ERRED BY GRANTING JUDGMENT AS A MATTER OF LAW AS TO THE JURY'S AWARD OF ACTUAL DAMAGES ........................... 32

1.     Wakefield's evidence of the fair market value of *Untitled* was sufficient to support the jury's award......... 33

2.     Wakefield presented sufficient evidence for a determination of a hypothetical lost license fee ............... 38

3.      Saved acquisition costs are a proper measure of damages .......................................................... 39

D.     THE DISTRICT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT AGAINST WAKEFIELD ON THE ISSUE OF INDIRECT DAMAGES ............................................................. 41

     1.      Wakefield presented sufficient evidence to survive summary judgment on the issue of indirect damages ........ 41

     2.      The Olen Parties' "brand prestige" argument is erroneous …………………………………………...45

IV.    CONCLUSION ....................................................................... 46

CERTIFICATE OF COMPLIANCE................................................................ 47

# TABLE OF AUTHORITIES

**Page**

## <u>Federal Cases</u>

*Alaska Stock, LLC v. Pearson Educ., Inc.*,
975 F.Supp.2d 1027 (D. Alaska 2013) ............................................................ [23], [24],
.................................................................................................................................. [25]

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................... [36], [37]

*Apple, Inc. v. Psystar Corp.*, 673 F.Supp.2d 943 (N.D. Cal. 2009) ................. [10]

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240
(3d Cir. 1983)................................................................................................. [21]

*Cadence Design Sys., Inc. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ............................................................................ [19]

*Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*,
770 F.3d 610 (7th Cir. 2014) ............................................................................ [31]

*City of Carlsbad v. Shah*, 850 F.Supp.2d 1087 (S.D. Cal. 2007).................... [11], [20]

*Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*,
843 F.2d 600 (1st Cir. 1988)............................................................................ [19]

*Del Amo v. Baccash*, 2008 WL 2780978,
No. CV 07-663 PSG (JWJx) (C.D. Cal. 2008)................................................ [44]

*Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 537 (7th Cir. 1985) .................. [39], [40],
.................................................................................................................................. [41]

*Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876 (9th Cir. 1992)........................... [35]

*Eastman Kodak Co. v. Image Tech. Serv., Inc.*,
504 US 451, 112 S.Ct. 2072 (1992)................................................................ [24]

*eBay, Inc. v. MercExchange, L.L.C.,*
547 U.S. 388, 126 S.Ct. 1837 (2006) ................................................................ 6, 8, 9
.......................................................................................................................... 19

*Fahmy v. Jay-Z*, 835 F.Supp.2d 783 (C.D. Cal. 2011) ...................................... 23, 24

*Flying J, Inc. v. Central CA Kenworth*, 45 Fed.Appx. 763 (9th Cir. 2002) ..... 16

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
772 F.2d 505 (9th Cir. 1985) ............................................................................ 34, 40

*Gabelli v. S.E.C.*, 133 S.Ct. 1216 (2013) ......................................................... 28, 29,
.......................................................................................................................... 30

*Garcia v. Coleman*, No. C-07-02279-EMC, 2008 WL 4166854
(N.D. Cal. Sept. 8, 2008) ................................................................................... 24

*Golan v. Holder*, 132 S.Ct. 873 (2012) ............................................................ 20

*Grant Heilman Photography, Inc. v. McGraw-Hill Cos., Inc.*,
28 F.Supp.3d 399 (E.D. Pa. 2014) .................................................................... 31

*Harper House v. Thomas Nelson, Inc.,* No. CV 85-4225-PAR,
1987 WL 30581 (C.D. Cal. Aug. 28, 1987) ...................................................... 40, 41

*Hounddog Prod's, LLC v. Empire Film Grp. Inc.*,
826 F.Supp.2d 619 (S.D.N.Y. 2011) ................................................................ 7

*La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ............................................................................ 6

*Lee v. Bickell*, 292 U.S. 415, 54 S.Ct. 727 (1934) .......................................... 15

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
23 F.Supp.3d 344 (S.D.N.Y. 2014) .................................................................. 31

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) .............................................. 35, 42,
.......................................................................................................................... 43

*Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009) .......... 27

*MGM Studios, Inc. v. Grokster, Ltd.*,
518 F.Supp.2d 1197 (C.D. Cal. 2007) ............................................ 10

*Microsoft Corp. v. Atek 3000 Computers, Inc.*,
No. 06 CV-06403-SLT, 2008 WL 2884761 (E.D. N.Y. 2008) ........................ 12

*Microsoft Corp. v. Buy More, Inc.*, --- F.Supp.3d ---,
No. 14-CV-09697-R, 2015 WL 5680308 (C.D. Cal. 2015) ............................ 11

*Microsoft Corp. v. Maturano*,
No. 1:06-cv-01747-OWW, 2009 WL 1530040 (E.D. Cal. 2009) ................... 21

*Montana Silversmiths, Inc. v. Taylor Brands, LLC*,
850 F.Supp.2d 1172 (D. Mont. 2012) ............................................ 11

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ................................ 39

*Oracle Corp. v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014) ................................ 38

*Oracle USA, Inc. v. SAP AG*,
No. C 07-01658-PJH, 2011 WL 3862074 (N.D. Cal. 2011) ........................... 38

*Perfect 10, Inc. v. Google, Inc.* 653 F.3d 976 (9th Cir. 2011) ........................ 15, 16

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014) ................... 30, 31

*Pincay v. Andrews*, 238 F.3d 1106 (9th Cir 2001) ......................................... 23, 24

*Polar Bear Prod's, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) .......... 27, 42,
.................................................................................................. 45

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) ................ 28

*Raimondi v. Olenicoff, et al*, No. SACV 12-02094-AG,
2015 WL 9703485 (C.D. Cal. July 7, 2015) .................................................. 7

*Rainey v. Wayne State Univ.*, 26 F.Supp.2d 963 (E.D. Mich. 1998)................ 43

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
No. C 12-05543-SBA, 2012 WL 5936214 (N.D. Cal. Nov. 27, 2012) ............ 20

*Sennheiser Elec. Corp. v. Eichler*,
No. CV 12-10809-MMM, 2013 WL 3811775 (C.D. Cal. 2013) .................... 11

*Seven Arts Filmed Entmt. Ltd v. Content Media Corp., PLC*,
733 F.3d 1251 (9th Cir. 2013) ......................................................... 25

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
562 F.2d 1157 (9th Cir. 1977) ...................................................... 33, 40

*Street Talk Tunes v. Vacaville Recreation Corp.*,
No. CIV S-05-02401-FCD, 2006 WL 2423429 (E.D. Cal. 2006)................... 10

*TRW, Inc. v. Andrews*, 534 U.S. 19, 122 S.Ct. 441 (2001).............................. 27, 28,
.......................................................................................... 30

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S.Ct. 1798 (1982) ........... 7

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) ................. 28, 30

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
705 F.2d 1515 (9th Cir. 1983) ....................................................... 24

## Federal Statutes

U.S. Const. art. I, §8, cl. 8................................................................. 20

17 U.S.C. §107(1)-(2) ...................................................................... 26

17 U.S.C §502(a) ............................................................................ 7

17 U.S.C. §503(b) ........................................................................ 7, 14

17 U.S.C. § 507(b) .......................................................................... 27

## **Other Authorities**

3 Nimmer §12.05[B] ............................................................... [27](#)

6 W. Patry, Copyright §20:19 .......................................... [30](#)

6 Patry on Copyright 22.78 ............................................ [14](#)

H.R. Rep. No. 94-1476 (1976) ....................................... [41](#)

## I.    SUMMARY OF ARGUMENT

Plaintiff/Appellant/Cross-Appellee Donald Wakefield ("Wakefield") hereby submits his Third Brief on Cross-Appeal against Igor Olenicoff and Olen Properties Corp. (collectively, the "Olen Parties").[1]  Both the jury and the District Court Judge found the Olen Parties to have blatantly infringed Wakefield's copyright in Wakefield's unique work, *Untitled*, by causing exact copies and unauthorized derivative works to be made in China, and subsequently publicly displaying those infringing copies at several of their commercial properties throughout Southern California.  The Olen Parties now seek to be rewarded for their infringement by having this Court reverse the District Court's ruling that the infringing copies must be destroyed, coupled with asking this Court to affirm the District Court's grant of Olen Parties' Motion for Judgment as a Matter of Law ("JMOL"), which erroneously stripped Wakefield of a $450,000 jury verdict.  In other words, the Olen Parties are asking this Court to send a clear message to potential infringers: infringement of unique works of fine art has no cost.  The Olen Parties do not deserve the free pass they seek.

---

[1] In his Third Brief, for judicial economy, Wakefield will track the presentation of the Olen Parties' Second Brief on Cross-Appeal ("Second Brief").

## II.    SUPPLEMENTAL STATEMENTS

In his First Brief on Cross-Appeal ("First Brief"), Wakefield provided a comprehensive Statement of the Case which recited the facts and evidence presented at trial relevant to Wakefield's Issues on Appeal.  In their Second Brief, the Olen Parties offered additional Issues Presented and their own Statement of Facts.  Wakefield provides herein this Supplemental Statement of Evidence Presented and Procedural History, not previously stated by Wakefield or the Olen Parties, but relevant to the Olen Parties' Issues Presented.

### A.    SUPPLEMENTAL STATEMENT OF EVIDENCE PRESENTED

The Olen Parties own dozens of commercial properties in California, Arizona, Nevada and Florida.  (S.E.R. 122).  The infringing copies addressed at trial were displayed at three of those properties located throughout Southern California.  (E.R. 62).  After trial, Wakefield discovered an additional unauthorized and infringing copy of *Untitled* at a different Olen-controlled location.  (F.E.R. 3, 11).  The Olen Parties did not disclose this additional copy in discovery.  Quite the opposite, the Olen Parties swore under penalty of perjury on multiple occasions that they had revealed the existence and location of all infringing copies and derivatives of *Untitled*.  (F.E.R. 5-6, 22-23, 30, 32, 38).  Those affirmations had been made by Igor Olenicoff, a convicted felon.  (F.E.R. 24, 34, 43).

2

The Olen Parties claim that their copies were bought from "a China-based artist" with no citation to any evidence in record. (Second Brief, p. 6) There was no evidence presented that such an "artist" existed. The evidence at trial was that the copies were manufactured in China, at the behest of the Olen Parties, and based on specifications and instructions provided by the Olen Parties. (E.R. 59, 77-78, 83-85).

## B.   SUPPLEMENTAL STATEMENT OF PROCEDURAL HISTORY

Wakefield's Complaint was based upon the Olen Parties' infringement of *Untitled* with seven knock-off sculptures, four exact copies entitled *Human Nature's Many Faces* and three derivative copies entitled *A Tear Must Fall*. (E.R. 269). On summary judgment, the District Court determined that suit on the first copy Wakefield discovered was barred by the statute of limitations. (E.R. 31). The jury returned its verdict on the six remaining known infringing copies alleged in Wakefield's Complaint.

After trial, Wakefield discovered an additional copy of *Untitled* at the Olen Parties' location entitled Two Venture Plaza. (F.E.R. 3, 11). Prior to this discovery, but while litigation was pending, the Olen Parties swore on multiple occasions under penalty of perjury that no additional copies existed. (F.E.R. 5-6, 22-23, 30, 32, 38). After trial, in addition to his Motion for Injunctive Relief, Wakefield filed a Motion to Reopen Evidence in order for the additional

3

undisclosed and ongoing infringement to be considered by the District Court in its ruling on the Motion for Injunctive Relief. (F.E.R. 1-39). The District Court denied Wakefield's Motion to Reopen Evidence, but noted in its ruling that "[b]y the terms of the injunction this apparent [additional] infringing copy of *Untitled* would need to be destroyed or delivered to Wakefield" and therefore "the injunction will already remedy the harm…." (E.R. 21).

## III.   LEGAL ARGUMENT

There is no dispute that the Olen Parties deliberately and repeatedly infringed Wakefield's copyright in his unique, one-of-a-kind sculpture, *Untitled*. Both the jury with its $450,000 damages verdict and the District Court with its Permanent Injunction sent the Olen Parties a clear message that they had infringed Wakefield's rights, that they had damaged Wakefield's goodwill and reputation and that they will not be permitted to continue on unabated.

Unfortunately, that message has fallen on deaf ears. Without disputing that they willfully infringed Wakefield's rights or that that they continue to do so with their continued display of the infringing pieces, the Olen Parties brazenly ask this Court to shun the jury's and the District Court's factual findings and pave the way for them and other potential infringers to infringe unique, copyrighted work at will without any fear of recourse.

On the Olen Parties' Issues Presented, their Second Brief falls woefully short. The District Court properly relied upon the jury's factual findings and conclusions of law in issuing its permanent injunction enjoining the Olen Parties' present and future infringement. The District Court also properly denied the Olen Parties' JMOL in finding that Wakefield's claims were not barred by the statute of limitations.

On the Issues Presented in Wakefield's First Brief, the Olen Parties fail to adequately support the District Court's erroneous partial grant of their JMOL, stripping Wakefield of the jury's verdict. They also fail to support the District Court's erroneous grant of summary judgment on statute of limitations grounds with respect to the first infringing sculpture Wakefield discovered. Finally, they fail to support the District Court's erroneous grant of summary judgment against Wakefield on the issue of indirect damages.

For each of the reasons stated herein as well as those stated in Wakefield's First Brief, Wakefield is entitled to full protection of his copyright. The findings of the jury (damages) and the District Court (permanent injunction) should be upheld and the Olen Parties should be held accountable.

**A. THE DISTRICT COURT PROPERLY RELIED UPON THE JURY'S FINDINGS AND CONCLUSIONS OF LAW IN ISSUING ITS PERMANENT INJUNCTION ENJOINING THE OLEN PARTIES FROM CONTINUING TO INFRINGE WAKEFIELD'S COPYRIGHT AND ORDERING THAT THE INFRINGING COPIES BE DESTROYED**

The Olen Parties appeal the District Court's entry of a permanent injunction, enjoining their continued infringement of Wakefield's work and ordering them to either destroy or deliver the infringing knock-off copies to Wakefield. In other words, they ask this Court to reverse the District Court, rule inconsistently with the jury's factual finding of infringement, validate their past infringement and provide a stamp of approval to their ongoing infringement, presumably forever. This Court should deny this absurd request and affirm that the District Court, in its sound discretion, properly granted Wakefield's Motion for Injunctive Relief.

The Olen Parties' burden is to demonstrate that the District Court abused its discretion in granting Wakefield's Motion for Injunctive Relief. *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837 (2006). Where, as here, the District Court identifies and applies the correct legal rule to the relief requested, its Order may only be reversed if it "resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). This review is limited to consideration of "whether

the … decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Id.* The Ninth Circuit has instructed that "[i]t is important to consider the totality of the circumstances bearing on whether a permanent injunction is appropriate equitable relief." *Id*. at 880.

The Copyright Act provides that the District Court "may … grant … final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright" and that "[a]s part of a final judgment or decree, the Court may order the destruction or reasonable disposition of all copies … found to have been made or used in violation of a copyright's exclusive rights …." 17 U.S.C. §§502(a), 503(b); *see also Hounddog Prod's, LLC v. Empire Film Grp. Inc.*, 826 F.Supp.2d 619, 633 (S.D.N.Y. 2011). Permanent injunctions are especially appropriate "where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982); *Raimondi v. Olenicoff, et al*, No. SACV 12-02094-AG, 2015 WL 9703485, *3 (C.D. Cal. July 7, 2015).

The District Court properly ordered the permanent injunction. It reviewed the evidence presented at trial and concluded (just as the jury did) that Wakefield suffered an irreparable injury, the continuing nature of which left him without an adequate remedy at law for the Olen Parties' continuing infringement. It also

correctly concluded that the public interest is served by the removal and destruction of the infringing pieces and that the separate factors greatly outweighed the contrived (and unsupported) hardship the Olen Parties claimed to meet as a result. It made each of these conclusions "**based on the jury's findings**." (E.R. 4) (emphasis added).

Faced with the District Court's thoughtful consideration of the *eBay* factors, the Olen Parties have chosen not to attack the Court's findings of facts and conclusions of law. Rather, they seek reversal based upon conjecture alone – that is, what they speculate the District Court "appear[ed]" to do (Second Brief, p. 12), what "apparently" motivated the District Court (*Id.*, p. 13), what the District Court "seemed" to feel (*Id.*), what the District Court's "apparent goal" was (*Id.,* p. 15) and what the District Court "seemed" to intend to do (*Id.*, pp. 18-20).

Guessing as to what motivated the District Court is an unconventional approach, to be sure. It is meritless, as well, because the motivation the Olen Parties ascribe is completely unsupported. To decipher the District Court's rationale, this Court need look no further than the Order itself wherein the District Court expressly considered each of the *eBay* factors and concluded, in its equitable discretion and based upon the jury's findings, that injunctive relief was necessary to prevent and restrain the Olen Parties' continued infringement.

1.      **The District Court correctly identified and applied the *eBay*
            factors.**

The Olen Parties do not dispute that the District Court correctly identified
the four-factor *eBay* test as the barometer for determining Wakefield's Motion for
Injunctive Relief.  (Second Brief, 11).  According to the District Court, "[t]hose
factors require: (1) that [the plaintiff] has suffered an irreparable injury; (2) that
remedies available at law, such as monetary damages, are inadequate to
compensate for that injury; (3) that, considering the balance of hardships between
the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public
interest is not disserved by a permanent injunction."  (E.R. 16) (citing *eBay*, 547
U.S. at 391).

 The District Court properly considered each factor and it did not abuse its
discretion in doing so.

a.      **Wakefield suffered, and continues to suffer, irreparable
                harm and his remedies at law are inadequate to compensate
                for the Olen Parties' continued infringement.**

The District Court concluded that Defendants' continued public display of at
least seven infringing sculptures caused Wakefield to suffer irreparable harm,
which he continues to suffer and for which there is no adequate remedy at law.  It
correctly noted that these two factors are properly considered together.  (E.R. 16).

The District Court's conclusion is consistent with Ninth Circuit precedent. While there is no longer a presumption of irreparable harm in copyright infringement cases, it is not difficult to establish. *See e.g., Apple, Inc. v. Psystar Corp.*, 673 F.Supp.2d 943, 948 (N.D. Cal. 2009) ("proof of such harm stemming from infringement … should not be difficult to establish"); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1214-15 (C.D. Cal. 2007) ("Irreparable harm may not be presumed, but in run-of-the-mill copyright litigation, such proof should not be difficult to establish. ... Thus, plaintiffs may establish an irreparable harm stemming from the infringement (*e.g.,* loss of market share, reputational harm). It is also possible that some qualitative feature about the infringement itself, such as its peculiar nature, could elevate its status into the realm of irreparable harm.") (internal citations omitted). Permanent injunctions are especially appropriate where the threat of continuing infringement exists. *Street Talk Tunes v. Vacaville*, No. CIV S-05-02401-FCD, 2006 WL 2423429, *1 (E.D. Cal. 2006).

Tellingly, the Olen Parties do not dispute that they repeatedly infringed Wakefield's work. Nor do they dispute that they continue to infringe with each passing day that they possess and publicly display the infringing pieces. Nor did they present any evidence that they intend to remove or destroy the infringing pieces – and their Second Brief is a clear indication that they do not.

Given that they have conceded past and future infringement, the evidentiary proof needed to establish irreparable harm is not difficult to establish. Courts within the Ninth Circuit have consistently recognized that potential injury to goodwill and reputation constitutes irreparable harm. *See e.g., Microsoft Corp. v. Buy More, Inc.*, No. 14-CV-09697-R, 2015 WL 5680308, *8 (C.D. Cal. 2015) (injury to goodwill "constitutes irreparable harm that cannot be compensated by monetary damages"); *Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809-MMM, 2013 WL 3811775, *10 (C.D. Cal. 2013); *Montana Siversmiths, Inc. v. Taylor Brands, LLC*, 850 F.Supp.2d 1172, 1188 (D. Mont. 2012) (potential harm to good will and reputation is sufficient to merit injunctive relief). In fact, the threat alone of loss of goodwill constitutes irreparable harm supporting an injunction. *City of Carlsbad v. Shah*, 850 F.Supp.2d 1087, 1113 (S.D. Cal. 2007).

Wakefield's evidence was more than sufficient. His evidence at trial was that he is an experienced artist who for years has specialized in creating unique, one-of-a-kind works of art. (E.R. 4, 17, 108-109). He presented evidence of his reputation, goodwill and character as a respected sculptor of unique pieces, which he has earned through decades of exclusively creating unique work. (E.R. 4, 98-99, 108-109, 152). The evidence included that he has been commissioned by public agencies to create unique work for public areas, that he has shown and sold unique pieces of art in galleries and that he makes his living solely as a creator of

11

unique, one-of-a-kind pieces of art. (E.R. 108-110, 152). The reasonable and necessary inference and conclusion from this evidence is that Wakefield enjoyed this goodwill and reputation for his entire career and both are threatened by the Olen Parties' continued public display of knock-off copies of his unique work. The District Court properly followed the jury's findings in making this conclusion.

Moreover, the Olen Parties' stated intention to continue to infringe proves Wakefield's future irreparable injury in and of itself. *See e.g, Microsoft Corp. v. Atek 3000 Computers*, No. 06 CV-06403-SLT, 2008 WL 2884761, *5 (E.D. N.Y. 2008). Irreparable injury is found where the defendant commits infringement and where the evidence gives the Court "no reason to conclude that defendant has or will cease its infringing acts…." *Id.*

Here, the Olen Parties not only concede their infringement, they are staunchly committed to **continuing** their infringement. As an example, after the jury found that they had infringed and awarded damages against the Olen Parties, Wakefield – on his own – discovered an additional knock-off copy of *Untitled* at the Olen Parties' location entitled Two Venture Plaza. This copy had not been disclosed by the Olen Parties in discovery. In fact, the Olen Parties' swore under penalty of perjury on several occasions that there were no additional copies beyond those alleged in Wakefield's Complaint. That misconduct – coupled with the fact that Mr. Olenicoff is a convicted felon for crimes involving perjury – was more

12

than sufficient for the District Court to conclude that the Olen Parties' self-serving evidence was not credible and that they intended to continue to infringe in the copies they had disclosed, and quite possibly additional copies they continued to conceal.

The District Court therefore was correct in concluding that Wakefield's goodwill and his reputation remain subject to harm from the Olen Parties and that the only way to prevent and restrain it in the future was a permanent injunction expansive enough to cover both the disclosed copies and any additional undisclosed copies.

### i. Injunctive relief is designed to prevent and restrain future harm; proof of past monetary damages is not required for injunctive relief under the Copyright Act.

The Olen Parties' suggestion that the material distinction between Wakefield's ability to prove damages at trial and his alleged failure to do so at trial[2] is a red herring for multiple reasons. First, the Copyright Act does not require that a party suffer financial damages for injunctive relief to be merited. The Olen Parties made this same argument in the District Court and it correctly noted its lack of legal support. (E.R. 17) ("… Defendants have not supported this argument with any authority."). The Copyright Act simply provides that "[a]s part

---

[2] For the reasons set forth in Wakefield's First Brief, and argued further herein at Sections III.C – III.D, Wakefield did prove legally cognizable damages at trial, which the jury found.

of a final judgment or decree, the Court may order the destruction or reasonable disposition of all copies … found to have been made or used in violation of a copyright's exclusive rights …." *Id.* at §503(b). It contains no contemporaneous requirement of monetary harm. This Court should decline the Olen Parties' request to create one. Instead, it should follow the plain language of the Copyright Act, which provides that where the factfinder has found infringement to exist – which the jury did here – destruction or reasonable disposition is a proper remedy to prevent the future infringement the Olen Parties make clear they intend to commit.

Second, the Olen Parties miss the point because they focus only on Wakefield's past damages and ignore the future. The remedies in copyright law are axiomatic: monetary damages may be awarded for past harm, but injunctive relief is intended to prevent future harm. *See* 6 PATRY ON COPYRIGHT 22.78. So the existence of past commercial activity with respect to *Untitled* has no bearing on prevention of future harm. Where this unsupported argument ultimately falls apart is its failure to answer the next logical question: what should happen if Wakefield licenses *Untitled* in the future or monetizes it in some other way? Presumably, the Olen Parties would agree that an injunction would then be necessary, even under their contrived theory. But if that were the case, in order to obtain an injunction to prevent the harm and restrain the Olen Parties' infringement – which the Olen

Parties must concede would exist – Wakefield would then have to file an additional lawsuit. This absurd result is the logical extension of the Olen Parties' position. And it is this precise absurd result – *a multiplicity of lawsuits* – that the Olen Parties concede the District Court's injunction should be designed to prevent. (*See* Second Brief, p. 18) (citing *Lee v. Bickell*, 292 U.S. 415, 421, 54 S.Ct. 727, 730 (1934)).

> ii. **The connection between the Olen Parties' continued infringement and the threat to Wakefield's reputation and goodwill is undisputed and requires injunctive relief.**

In denying the evidentiary basis for irreparable harm, the Olen Parties point to only two cases, neither of which has any application here. First, in *Perfect 10, Inc. v. Google, Inc.* 653 F.3d 976 (9th Cir. 2011), the plaintiff publisher sought a **preliminary** injunction against the defendant search engine provider to prevent the display of cached pictures of its copyrighted work. *Id*. at 978. This Court affirmed the lower court's denial of this preliminary relief where the only evidence adduced by plaintiff was an affidavit from its principal stating that the number of its copyrighted pictures increased in search results over a period of time and the company's revenues declined for a similar period, but failed to adduce additional evidence relating those two facts. *Id.* Contrast that here, where the connection between the Olen Parties' infringement and the threat to Wakefield's reputation and goodwill is clear as day. The jury and the District Court concluded that the

Olen Parties currently possess and publicly display several infringing pieces of work on their commercial properties and website. As the only infringing parties, the Olen Parties are the only ones posing a threat to Wakefield's goodwill and reputation. This is in contrast to the plaintiff in *Perfect 10* where the evidence was that the alleged injury was also caused by several other search engine providers. *Id.* at 982. So *Perfect 10* is inapposite.

The Olen Parties similarly misplace reliance on *Flying J, Inc. v. Central CA Kenworth*, 45 Fed.Appx. 763 (9th Cir. 2002). In *Flying J*, the plaintiff truck stop franchisor sought to enjoin a competitor from using its architectural plans to build a competing truck stop. *Id.* at 767. The Olen Parties posit that this Court held that the plaintiff failed to show it would suffer future harm from the alleged infringement. (Second Brief, p. 17).

But that is not what this Court held in *Flying J* at all. Instead, the district court in that case had "expressly recognized that [the plaintiff] may suffer future harms; it simply did not allow Flying J a remedy for them." *Id.* It had nothing to do with the plaintiff's lack of evidence – instead, the lower court had sanctioned plaintiff for discovery violations and prohibited evidence of future damages because plaintiff's damages expert failed to include future damage calculations in his report, and therefore concluded that his failure to do so was prejudicial to defendant. *Id.* None of this is present here.

Here, the jury found that the Olen Parties infringed Wakefield's copyrights in copying and displaying multiple knock-off copies of *Untitled*. Even after that verdict, the Olen Parties knowingly concealed the existence of at least one additional infringing piece, which Wakefield ultimately discovered in spite of the Olen Parties' false statements to the contrary under oath. From the moment they enlisted the Chinese fabricator to create the infringing pieces to the present day, the Olen Parties have been steadfast in their resolve to infringe Wakefield's copyright. This poses a real and continuing threat of harm to Wakefield's goodwill and reputation in the future, for which Wakefield has no adequate remedy at law but the injunctive relief the District Court properly entered.

### iii. The Olen Parties' conjecture as to the District Court's motivation is meritless.

Ultimately, the Olen Parties' attack on the District Court's finding of irreparable harm and inadequacy of legal remedy is based on nothing more than conjecture. Their Second Brief is littered with futile speculation as to what they surmise the District Court "appear[ed]" to do (Second Brief, p. 12), what "apparently" motivated the District Court (*Id.*, p. 13), what the District Court "seemed" to feel (*Id.*, p. 13), what the District Court's "apparent goal" was (*Id.,* p. 15) and what the District Court "seemed" to intend to do (*Id.*, pp. 18-20). None of this is contained in the District Court's Order.

17

As just one example of the baselessness of this argument, the Olen Parties complain that the District Court "seemed receptive to counsel for Wakefield's request for a mandatory injunction" and that it "seemed to treat the mandatory permanent injunction as some sort of 'consolation prize.'" (Second Brief, p. 13). As "support" for this argument, the Olen Parties offer a truncated exchange from the hearing on Wakefield's Motion for Injunctive Relief:

> Mr. Kuznetsky:     If my client cannot get money damages, he can at least be made whole or partially whole by getting the injunctive relief.
> The Court:   Okay ….

 (Second Brief, p. 13, citing (S.E.R. 59)).

This exchange, in and of itself, means nothing.  The District Court did not rule from the bench following this exchange and it made no reference to a "consolation prize" or "making Wakefield whole" in its Order.  (E.R. 1-22). Nevertheless, a *full* citation to the record reveals this exchange to be even more meaningless:

> Mr. Kuznetsky:     If my client cannot get money damages, he can at least be made whole or partially whole by getting the injunctive relief.
> The Court:   Okay.  **I haven't read what you filed on Sunday.  Have you read what he filed on Sunday, Mr. Buus [Olen Parties' counsel]?**
> Mr. Buus:    I haven't, Your Honor.
> The Court:   **All right.  I'm going to take another look at the Tentative Ruling.  As I said, it was very tentative and I might be making changes.**

(S.E.R. 59) (emphasis added).

Following this exchange, the District Court permitted the Olen Parties to file a written response to Wakefield's Motion for Injunctive Relief and Wakefield to file a written Reply. (S.E.R. 60) It was only after that written submission and the District Court reviewing its tentative Order that it issued the permanent injunction with full consideration of the jury's findings and the *eBay* factors. That is what the District Court **actually** did. The Olen Parties' ruminations are baseless.

### b. The balance of hardships overwhelmingly favors Wakefield.

The only evidence concerning hardship experienced by any party is the hardship Wakefield continues to endure in the threat to his goodwill and reputation if the Olen Parties are permitted to continue their infringement unabated.

The Olen Parties presented no evidence of hardship at trial. The only hardship they even argue (without any support in the record) is the effort supposedly required to remove and replace the infringing sculptures. However, Courts have consistently rejected this argument as fundamentally at odds with the purpose of the Copyright Act and its protections: "a defendant who knowingly infringes another's copyright **cannot complain of the harm that will befall it when properly forced to desist from its infringing activities**." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (emphasis added); *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612

19

(1st Cir. 1996); *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, No. C 12-05543-SBA, 2012 WL 5936214 (N.D. Cal. Nov. 27, 2012). There is no harm to a party where an injunction "would merely require [the infringing party] to comply with the law." *City of Carlsbad*, 850 F.Supp.2d at 1113.

Seemingly cognizant of the emptiness of this argument, the Olen Parties revert to musing that the District Court "seemed to be" trying to "even the score" with them. Once again, they offer no support in the record for this rank speculation. In fact, this speculation is directly contradicted by the District Court's own words where it expressly concluded that Wakefield had an interest in preserving his exclusive copyright, which can only be done with the injunctive relief granted. (E.R. 17). Accordingly, the District Court correctly concluded that the balance of hardships favors injunctive relief.

### c. The public interest is only served by enforcement of copyright law and destruction of the infringing pieces.

Public policy is served by the injunctive relief sought by Wakefield. Dating back to the Constitution, there has been an undeniable policy in the law to promote the progress of the arts by securing for artists their exclusive rights to their original work. U.S. Const. art. I, §8, cl. 8; *Golan v. Holder*, 132 S.Ct. 873, 889 (2012) ("The provision of incentives for the creation of new works is surely an essential means to advance the spread of knowledge and learning.")

Copyright protection serves the public interest. "Since Congress has elected to grant certain rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protection and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Microsoft Corp. v. Maturano*, No. 1:06-cv-01747-OWW, 2009 WL 1530040 (E.D. Cal. 2009); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

The Olen Parties' argument concerning the public interest factor is perhaps their most audacious. In arguing that the public interest is somehow served by their continued public display of the infringing pieces, the Olen Parties state that "the removal of **unique art** from public areas … would serve no public interest." (Second Brief, p. 21) (emphasis added). The problem with this, of course, is that the infringing pieces are not "unique art" – they are knock-off copies and unauthorized derivative works of Wakefield's copyrighted work. After all this time and in the face of the jury's findings, the Olen Parties continue to flaunt Wakefield's rights and maintain they have done nothing wrong – to such extent that they argue that the unauthorized copies of *Untitled* are "unique art" serving some public interest.

21

Notwithstanding the Olen Parties' state of denial, their argument is ludicrous. Being allowed to display these works would only reward the Olen Parties' infringement and encourage further infringement by the Olen Parties or others, all of which plainly contradicts the policy of copyright law to encourage creation by offering the authors of unique works of original expression a limited monopoly in their works.

The District Court properly concluded that enforcement of copyright law is a public good and "that the public interest [is] not disserved by the removal of the infringing work." (E.R. 18).

### B. THE DISTRICT COURT PROPERLY DENIED THE OLEN PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW BECAUSE NONE OF WAKEFIELD'S CLAIMS WERE BARRED BY THE STATUTE OF LIMITATIONS

#### 1. The statute of limitations does not bar Wakefield's claims as to any of the infringing works.

The Olen Parties do not appeal the findings against them of copyright infringement, vicarious copyright infringement or contributory copyright infringement. Instead, they desperately grasp at the notion that Wakefield should be constructively charged with knowledge of the Olen Parties' multiple infringing copies of large-scale sculptures, carved into granite, and displayed on their properties. However, the law is clear that Wakefield should not have been charged

with constructive knowledge of infringement upon his discovery of the first copy of *Human Natures Many Faces*, nor any of the other infringing works.

In *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F.Supp.2d 1027, 1035 (D. Alaska 2013), the plaintiff was charged with constructive knowledge of a defendant's infringement after it learned, from emails sent by the defendant, that more than 350,000 copies of a photograph were printed even though a license had been issued for only 40,000 copies. The district court held that once the plaintiff "reasonably learned" of the overprinting, it was on constructive knowledge of the infringement. The district court rejected the defendant's "all or nothing" argument that suspicions over infringement of a single work put the plaintiff on notice of all of the plaintiff's other possible claims of infringement. *Id.* Just as in *Alaska Stock*, Wakefield should only have been charged with knowledge once he reasonably learned of the actual infringement – *i.e.*, when he discovered the additional copies in 2010.

Like in *Alaska Stock*, each of the cases cited by the Olen Parties hold that constructive knowledge may only be imputed to a plaintiff after he **actually learns** of an initial infringement. In *Fahmy v. Jay-Z*, 835 F.Supp.2d 783, 790 (C.D. Cal. 2011), the plaintiff was charged with constructive knowledge of other possible infringements only after the plaintiff "became aware" of an initial infringement. In *Pincay v. Andrews*, 238 F.3d 1106, 110 (9th Cir 2001), the plaintiff was charged

23

with constructive knowledge of an injury only after receiving written disclosure of that injury. In *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 152 (9th Cir. 1983), the plaintiff was charged with constructive knowledge of subsequent infringements based upon the plaintiff's filing of a copyright infringement lawsuit over another infringement. In each instance, the plaintiff was only charged with constructive knowledge after receiving sufficient facts to put the plaintiff on actual notice of infringement.

Here, the District Court held on summary judgment that the first discovered copy was barred by the statute of limitations. However, as discussed in Wakefield's First Brief, on summary judgment all inferences drawn from the evidence must have been drawn in the nonmoving party's favor – here, Wakefield. *See e.g. Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 US 451, 456, 112 S.Ct. 2072, 2077 (1992). Just like in *Alaska Stock*, *Fahmy* and *Pincay*, the District Court should have concluded that a reasonable jury could find that Wakefield's lack of knowledge of the infringement was reasonable prior to January 2010 and Wakefield's claims were thus timely filed. *See e.g., Garcia v. Coleman*, No. C-07-02279-EMC, 2008 WL 4166854, *7-9 (N.D. Cal. Sept. 8, 2008). Put another way, at the time Wakefield discovered the initial infringing work, there was not sufficient information to put him on actual notice of the infringement, and thus his lack of knowledge at that time was reasonable.

Likewise, the District Court (and ultimately the jury) correctly found that none of the six subsequently discovered infringing works were barred. Each of the seven infringing sculptures was sculpted from granite. Unlike the ability of an infringer to mass produce infringing copies of other content like CDs, DVDs, digital files or even apparel, the evidence was that a granite sculpture like *Untitled* takes months of time and labor to sculpt. As such, in 2008 Wakefield could not reasonably conceive of anyone copying *Untitled* in a single instance, let alone making multiple copies. Given the jury's factual findings and conclusions of law, no other reasonable person would either. The evidence simply does not support a finding that Wakefield should have discovered these numerous and varied infringements based upon the viewing of a single sculpture in 2008, which at the time Wakefield reasonably believed to be the original *Untitled*.

Even if it is found that Wakefield was on notice of the one infringing work he found in 2008 (which should have been a question for the jury to determine), this alone should not **necessarily** have alerted Wakefield that there were six other infringing sculptures located at separate Olen Parties-controlled locations throughout Southern California. *See Seven Arts Filmed Entmt. Ltd v. Content Media Corp., PLC,* 733 F.3d 1251 (9th Cir. 2013) ("For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue…."); *Alaska Stock*, 975 F.Supp.2d at 1035-36 (a single infringement claim that was

barred by the statute of limitations did not bar the plaintiff's twenty-five other claims). Given the nature and medium of the infringing granite sculptures, the acts of creating and publicly displaying each of the seven infringing works should be viewed as seven different and distinct acts of infringement. If it is held that the first discovered sculpture is barred by the statute of limitations, the other six should not be.

Alternatively, if Wakefield is found to have notice of his multiple claims of infringement beginning in 2008, such notice should only relate to the *Human Nature's Many Faces* sculptures and not *A Tear Must Fall*. Under the Copyright Act, Olenicoff's personal contribution to the authorship and creation of the unauthorized derivative works, the *A Tear Must Fall* sculptures, are wholly distinct infringements of Wakefield's rights from their unauthorized direct copies, the *Human Nature's Many Faces* sculptures. *See* 17 U.S.C. §§107(1)-(2). Olenicoff admitted directly participating in the creation of the *A Tear Must Fall* copies after he purchased the *Human Nature's Many Faces* copies, and the unauthorized derivative work itself was not discovered until January 2010.

> **2.    The "Injury Rule" for accrual of copyright claims has been rejected by the Ninth Circuit and other Circuits in favor of the "Discovery Rule."**

Cognizant that each of Wakefield's claims is viable under Ninth Circuit precedent, the Olen Parties boldly ask this Court to change the law. The Ninth

Circuit has embraced and applied the "discovery rule" for decades. Nevertheless, the Olen Parties implore the Court to ignore its precedent and supplant it with the so-called "injury" or "violation" rule.

Just as it has in the past, the Ninth Circuit should decline to accept the Olen Parties' request. To wit, this Court has stated:

> . . . a copyright plaintiff who, through no fault of its own, discovers an act of infringement more than three years after the infringement occurred would be out of luck. Such a harsh rule would distort the tenor of the statute. Section [17 U.S.C. §] 507(b), like all statutes of limitations, is primarily intended to promote the timely prosecution of grievances and discourage needless delay. It makes little sense, then, to bar damages recovery by copyright holders who have no knowledge of the infringement, particularly in a case like this one, in which much of the infringing material is in the control of the defendant. *See* 3 NIMMER ON COPYRIGHTS § 12.05[B], 12-135 (tolling statute of limitations until moment of discovery is "better" view of § 507(b)).

*Polar Bear Prod's, Inc. v. Timex Corp.*, 384 F.3d 700, 706-07 (9th Cir. 2004).

The Olen Parties' reliance on *TRW, Inc. v. Andrews*, 534 U.S. 19, 23 (2001) is misplaced. In *TRW, Inc.*, the injury rule was held to apply to the Fair Credit Reporting Act (FCRA). As detailed immediately above, this holding was not followed by the Ninth Circuit in *Polar Bear* which was decided almost three years after *TRW, Inc.*

The Ninth Circuit again expressly rejected the injury rule in favor of the discovery rule in *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009), noting that "[t]he [discussion of the injury rule from *TRW, Inc.*] above is

27

surely food for thought and is worth musing on, but it does not overrule or seriously undermine our general approach to the point that we can now ignore preexisting Ninth Circuit law. We simply cannot declare that the rule is inapplicable in a case like this one." *Id.* at 940-41.

The Ninth Circuit is not the only Circuit to so hold. Several other Courts of Appeals have expressly refused to follow the *TRW, Inc.* "injury rule" in copyright cases. For example, in *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014), the Second Circuit held that "the text and structure of the Copyright Act, unlike the FCRA, evince Congress's intent to employ the discovery rule, not the injury rule. Policy considerations also counsel in favor of the discovery rule in this context." *Id.* at 124-25.

The Third Circuit has also distinguished *TRW, Inc.*, for example in *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009)*,* wherein it found that "Congress provided no directive mandating use of the injury rule to govern the accrual of claims under the Copyright Act. We conclude that use of the discovery rule comports with the text, structure, legislative history and underlying policies of the Copyright Act." *Id.* at 437.

The Olen Parties also cite to *Gabelli v. S.E.C.*, 133 S.Ct. 1216 (2013), which is easily distinguishable. *Gabelli* arose under the Investment Advisors Act of 1940 ("IAA"), which provides for the Securities and Exchange Commission ("SEC") to

28

seek civil penalties for the fraud of investment advisors. *Id.* at 1219. The Supreme Court declined to allow the SEC to take advantage of the discovery rule in the context of filing an enforcement action for civil penalties. *Id.* at 1221. It reasoned that the SEC: (1) has a "mission" to investigate violations; (2) has a number of legal tools to investigate fraud outside of the litigation context, including the extra-judicial power to require disclosures of trading information and records, subpoena witnesses and documents, pay whistleblowers for information, and offer "cooperation agreements" to violators; and (3) sought punitive civil penalties as opposed to recovering damages. *Id.* at 1222. Because of these factors, none of which are present here, the SEC was limited to using the injury rule in determining when the cause of action accrued under the IAA. *Id.*

In fact, the *Gabelli* Court directly distinguished such SEC enforcement actions from civil claims like copyright infringement. It explained that "[t]he discovery rule exists in part to preserve the claims of victims **who do not know they are injured and who reasonably do not inquire as to any injury**." *Id.* (emphasis added). It continued, "Most of us do not live in a state of constant investigation; absent any reason to think we have been injured, we do not typically spend our days looking for evidence that we were lied to or defrauded. And the law does not require that we do so." *Id.* Given the Court's own distinguishing, it

is no surprise that no Court of Appeals has applied *Gabelli* in the context of copyright infringement, or any other civil claim for that matter.

Finally, the Olen Parties' reliance on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014) is misplaced. The *Petrella* Court's discussion was limited to a discussion that the equitable defense of laches cannot preclude a timely-brought action for infringement, but may preclude certain types of relief when unfair. *Id.* at 1968. In fact, the *Petrella* Court noted that a strong majority of the Courts of Appeals have adopted and maintain the discovery rule for copyright infringement:

> Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."

*Id*. at 1969, n. 4 (citing *William A. Graham Co*, 568 F.3d at 433 & 6 W. PATRY, COPYRIGHT §20:19, p. 20-28 (2013) ("The overwhelming majority of courts use discovery accrual in copyright cases."))

Although, the Supreme Court acknowledged this conflict among the Courts of Appeals, it declined to resolve it. The fact that the Supreme Court did not rule on this is telling. For example, in *TRW, Inc.*, the Ninth Circuit was held to have erred in applying the discovery rule concerning the FCRA, and should have applied the injury rule instead. 534 U.S. at 23. Yet in *Petrella*, decided thirteen

30

years later, no such holding was made.  Accordingly, *Petrella* is not binding

precedent on changing the validity of the discovery rule.

Moreover, in the context of copyright infringement, Courts in several other

Circuits have expressly declined to apply *Petrella* beyond its limited holding on

laches.  Despite *Petrella*, the discovery rule "remains the law of the Second

Circuit."  *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F.Supp.3d

344, 358, n.11 (S.D.N.Y. 2014).  Similarly, Third Circuit Courts have refused to

discard "discovery rule" precedent based on *Petrella*, commenting that the

Supreme Court's comments on the injury rule were *dicta*, and that "this Court

cannot find that a comment in a footnote overrules the standard in nearly every

circuit in the country."  *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.*, 28

F.Supp.3d 399, 411 (E.D. Pa. 2014).  Even the Seventh Circuit decline to extend

*Petrella* beyond its holding.  *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*,

770 F.3d 610, 618 (7th Cir. 2014).

Based on the foregoing, the Ninth Circuit should decline the Olen Parties'

request to create new law and instead should follow its own precedent in applying

the "discovery rule."

### C. THE DISTRICT COURT ERRED BY GRANTING JUDGMENT AS A MATTER OF LAW AS TO THE JURY'S AWARD OF ACTUAL DAMAGES

In an effort to deprive Wakefield of the damages awarded by the jury, the Olen Parties misconstrue the relevant Ninth Circuit law on the issue of copyright damages. Properly construed, the jury's award of $450,000 in damages was appropriate and well within the range of permissible damages.

Unlike the principal cases cited by the Olen Parties, this case presents the unique situation where an infringer has made an exact copy of a one-of-a-kind work of art. The Olen Parties had exact copies made of Wakefield's *Untitled*. They were the same size, design, color and material (granite). (E.R. 6, 157, 192). The copies were so precise that Wakefield, who had spent six months creating the original *Untitled*, was unable to tell the difference when he saw the first copy. (E.R. 157, 192). The Olen Parties made the identical use of the copies as had been made of *Untitled* – *i.e.*, the public display of fine art.

The damages analysis might be different if the Olen Parties had, for example, used Wakefield's design as part of some other product, such as to create a logo for its brand. In that scenario, one might ask the value of using Wakefield's sculpture to create that logo, but that did not occur here. Rather, the Olen Parties infringed by causing exact copies to be made for public display. Because the

32

copies are identical in size, shape, material and use, the value of the entire original work is relevant and appropriate under the applicable Ninth Circuit law.

### 1. Wakefield's evidence of the fair market value of *Untitled* was sufficient to support the jury's award.

The Olen Parties misconstrue the teaching of the principal Ninth Circuit copyright cases. The Olen Parties harp on references to the "value of use" in a misguided attempt to argue that it is improper for a copyright plaintiff to value the work that was infringed. As explained in *Sid & Marty Krofft Television Prod's, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977):

> The value of use reference … is defined as a part of the reasonable value of plaintiff's work. It amounts to a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work.

> *Id.* at 1174.

In some cases, the value of the use may equate to the value of plaintiff's work. In other instances, the value of use might be less than the reasonable value of plaintiff's work. That makes sense where a copyright infringer has not made an exact copy of the original work, but has simply used portions of the work to make some other end product. In *Sid & Marty Krofft*, for example, the infringer (McDonald's) did not exactly copy the plaintiff's Pufnstuf characters. Rather, McDonald's only used certain aspects of the copyrighted work. For instance, the plaintiff's copyrighted character Pufnstuf wore a yellow and green dragon suit with

33

a blue cummerbund from which hung a metal saying "Mayor." The McDonald's infringing character, McCheese, wore a version of pink formal dress "tails" with knickers trousers. He had a typical diplomat sash on which was written "Mayor," the "M" consisting of the McDonald's trademark of an "M" made of golden arches. *Id* at 1165. Thus, the defendant made changes to the plaintiff's original work. As importantly, they used portions of the work for a larger purpose – to create a commercial – and thus it makes sense to value the portions used rather than the entire work. Here, in contrast, the Olen Parties made an exact copy of *Untitled* out of the exact same material. They did not use portions of Wakefield's work as part of some larger or different thing. They used the entire work to make an exact copy for the exact same use – public display – so logically the value of the work equates to the value of the use.

The same analysis applies to *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985), upon which the Olen Parties also rely. In that case, the defendant only presented six minutes of music from the copyrighted dramatic play *Kismet*, without telling any of the story of the play. The defendant thus appropriated only a small portion of the copyrighted dramatic work, which they used for a larger purpose, their musical revue entitled *Hallelujah Hollywood*, featuring ten acts of singing, dancing and variety performances. *Id*. at 510. Because they used only a fraction of the entire copyrighted work in making a

lengthier and very different program, the value of the use was logically different than the value of the work as a whole.

Similarly, in *Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002), the defendant did not make an exact replica of the plaintiff's sculpture. Rather, the defendant simply used a photograph of the sculpture for a different and larger purpose, the creation of a brochure. *Id*. at 912-13. Once again, the use by defendant was far different than plaintiff's original work.

In *Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876 (9th Cir. 1992), by contrast, the defendant used the entire architectural plans for the normal use of those plans, to build a house. *Id.* at 877-78. The plaintiff in *Eales* recovered the value of her plans. Here, the Olen Parties used *Untitled* to create an exact copy for the normal use of a sculpture – public display – and so Wakefield is likewise entitled to recover the value of his work.

As outlined in Wakefield's First Brief, the value of Wakefield's work was established through his testimony, that of his co-creator and an expert, Lela Hersh. (First Brief, pp. 19-21). The Hersh report was found to be sufficient to defeat the Olen Parties' Motion for Summary Judgment as to damages (E.R. 29) and so was also sufficient to defeat their Motion for Judgment as a Matter of Law as to damages.

In his First Brief, Wakefield noted the well-settled principle that evidence sufficient to survive summary judgment is also sufficient to withstand a motion for a judgment as a matter of law. The law is perfectly clear: "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) ("this standard [for summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)").

In response, the Olen Parties cherry-pick and misread the holding in *Anderson* to manufacture ambiguity in the law where none exists. Highlighting one word from one sentence in *Anderson*, the Olen Parties argue that "any evidence upon which a jury could properly proceed" materially differs from "sufficiency" of evidence to support a verdict. (Second Brief, p. 32). This is simply inaccurate and ignores the *Anderson* Court's use of the word "any." Read in context, the *Anderson* Court held "there is a preliminary question for the judge, **not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it**." *Id.* at 251 (emphasis added).

Far from creating a distinction as the Olen Parties' argue, the *Anderson* Court was clear that a denial of summary judgment is the same as holding that the

evidence at summary judgment is sufficient to support a jury verdict. To wit, the *Anderson* Court opined that "by its very terms, this [summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id.* at 247-48 (emphasis in original) (summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

Therefore, where a court denies summary judgment, it is holding that the evidence presented on summary judgment is sufficient to create a question of fact for the jury. That holding becomes the law of the case and the court should not later overturn a jury's verdict and factual findings based on that same evidence.

Here, Hersh's expert report was found sufficient to create a genuine issue of material fact, such that the question of actual damages was properly presented to jury. In its ruling at summary judgment, the District Court determined that the Wakefield had adduced sufficient evidence, as a matter of law, on the issue of actual damages. Wakefield relied on this determination and proceeded at trial accordingly. The jury heard this evidence and awarded Wakefield actual damages. The District Court erred in reversing course after the fact and finding the same evidence insufficient to support the jury's verdict.

37

**2.    Wakefield presented sufficient evidence for a determination of a hypothetical lost license fee.**

The Olen Parties attempt to manufacture an additional element of proving actual damages: namely, that Wakefield was required to produce evidence of a "benchmark transaction" in order to establish the value of a hypothetical lost license fee.  They do so by relying on the District Court opinion in *Oracle USA, Inc. v. SAP AG*, 2011 WL 3862074 (N.D. Cal. 2011), but at the same time ignoring the Ninth Circuit's opinion in the very same case.  No such requirement exists under Ninth Circuit case law and the evidence provided by Wakefield is more than sufficient to support the value of a hypothetical lost license fee as determined by the jury.

On appeal in *Oracle*, this Court held that while benchmark transactions may be used to establish the fair market value of a lost license fee, they are not required. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) ("a copyright plaintiff need not demonstrate that it would have reached a licensing agreement with the infringer or present evidence of 'benchmark' agreements in order to recover hypothetical-license damages").  Instead, the rule in the Ninth Circuit is that a plaintiff need only provide "sufficient objective evidence of the market value of the hypothetical license" in order to prevail.  *Id.*  So long as there is evidence of

38

"what a willing owner actually would have charged after negotiation with the buyer" there is sufficient evidence to support an award. *Id.*

Wakefield presented sufficient, objective evidence of the fair market value of a hypothetical license through his own valuation of his work, that of his co-creator and an independent appraisal to inform the jury's determination of value of the hypothetical license fee, all of which went un-contradicted at trial. There was also evidence, from Wakefield's appraiser and the Olen Parties, of the cost of production. (E.R. 79-80, 82, 101). The jury could well have used all of that evidence to determine a hypothetical license. Wakefield was not required to provide evidence of a benchmark transaction. Because Wakefield had never licensed his work, this case is distinguishable from *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001), cited by the Olen Parties, a case in which the plaintiff had licensed his work.

The lack of evidence of a benchmark transaction is not fatal to Wakefield's damage claim. He is entitled to recover the $450,000 awarded by the jury, as it is consistent with the reasonable value of a hypothetical lost license fee.

### 3. Saved acquisition costs are a proper measure of damages.

The Olen Parties point to cases from other jurisdictions to argue that the rationale set forth in *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir. 1985) should be rejected by the Ninth Circuit. It is telling that they are unable to

identify any Ninth Circuit authority specifically rejecting *Deltak* or the calculation of damages method it embraces. *Deltak* is firmly rooted in Ninth Circuit law, is in line with damage rationales prevalent in Ninth Circuit courts and should be applied in this case.

*Deltak's* analysis of saved acquisition costs as a measure of damages begins with the basic concept, accepted in the Ninth Circuit, that "the value of the infringer's use is a permissible basis for estimating actual damages." *Deltak*, 767 F.2d at 361 (citing *Sid & Marty Krofft*, 562 F.2d at 1174). The value of use calculation for damages is widely accepted in the Ninth Circuit. *Krofft*, 562 F.2d at 1174; *Frank Music*, 772, F.2d at 512; *Harper House v. Thomas Nelson, Inc.,* No. CV 85-4225-PAR, 1987 WL 30581 (C.D. Cal. Aug. 28, 1987) *rev'd on other grounds* 889 F.2d 197 (9th Cir. 1989) (in discussing *Deltak,* stating, "the value of use concept of measuring damages has been accepted by the Ninth Circuit"). Because the Court in *Deltak* relied upon Ninth Circuit opinions in equating "value of use" to saved acquisition costs, its finding is necessarily consistent with Ninth Circuit precedent.

The calculation of damages outlined in *Deltak* is in keeping with the statutory scheme of §504(b) and upholds the intent of the Copyright Act – to protect the exclusive right of artists to benefit from their work. Application of the

*Deltak* rule by this court is justified and necessary to uphold the basic protections

granted by the Copyright Act and applied by the Ninth Circuit.

*Deltak* upholds Congress's intent in drafting the Copyright Act. A primary

goal of the Act is to "prevent the infringer from unfairly benefitting from the

wrongful act." H.R. Rep. No. 94-1476, at 161(1976). The value of use measure

of damages is tailored to address situations in which more obvious measures of

damages do not apply. *See Harper House*, 1987 WL 30581 at *9 ("the value of

use instruction is justified in cases where the infringement did not produce a gain

to the infringer and where losses to the copyright owner are difficult to quantify").

*Deltak* and the cases that apply its saved acquisition cost measure of damages are

not extending the statutory scheme of §504(b), but rather are logically applying its

language to facts, consistent with the intent of Congress.

### D. THE DISTRICT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT AGAINST WAKEFIELD ON THE ISSUE OF INDIRECT DAMAGES

#### 1. Wakefield presented sufficient evidence to survive summary judgment on the issue of indirect damages.

The Olen Parties fail to save the District Court's erroneous grant of partial

summary judgment. Instead, they misstate the findings of several Ninth Circuit

cases to hold that infringement must be more than a "small part" of an infringer's

advertising scheme for plaintiff to be capable of offering sufficient proof to support

an award of indirect damages.

No Ninth Circuit cases state such an overbroad conclusion. Under Ninth Circuit precedent, a copyright plaintiff need only provide "the initial evidence of gross revenue duly apportioned to the infringement" and then "the **infringer bears the burden** of apportioning the profits that were not a result of infringement." *Polar Bear*, 384 F.3d at 711(emphasis added). A claimant need only prove the existence of a causal nexus in order to recover indirect profits. *Id.* ("a copyright plaintiff is bound to no more and no less than its statutory obligation to demonstrate a causal nexus between the infringement and the profits sought").

The Olen Parties cite to *Mackie* for the supposed proposition that there can be no causal nexus between a defendant's profits and infringement where the infringement is a small part of the overall product. The Olen Parties over read *Mackie*. While the *Mackie* Court precluded a claim for indirect profits, it did so because plaintiff failed to adduce "**any** non-speculative evidence that would even suggest a link" between infringement and profit. *Id.* at 911 (emphasis added).

The facts in *Mackie* were much different than present here. First, the plaintiff's expert in *Mackie* testified "that it was impossible to determine how much of [defendant's] revenue could be traced to the infringing artwork." *Id.* at 913. To overcome this, plaintiff argued that a percentage of the profits from the offending production were attributable to the infringement. *Id.* However, the Court noted that percentage was taken from defendant's internal documents

42

wherein defendant "hoped" the brochure (of which plaintiff's artwork was only a part) would result in an increase in season tickets. *Id.* at 913. The plaintiff offered no explanation or data for its reliance on this figure. Therefore, the *Mackie* Court rejected it as "an estimate based on multiple estimates" insufficient to prove indirect damages.

Wakefield's evidence was far more definite and reliable. Wakefield's expert, Daniel Rosenfeld, unequivocally stated the display of the infringing sculptures led to increased rental revenues. (E.R. 219). He presented objective standards by which to evaluate the causal nexus between the infringement and increased rental revenue realized by the Olen Parties. (E.R. 214-219) It was more than sufficient to meet the standards of summary judgment and the District Court should have left its determination to the jury.

The Olen Parties also misapply *Rainey v. Wayne State Univ.*, 26 F.Supp.2d 963 (E.D. Mich. 1998). In *Rainey*, the plaintiff sought indirect profits from defendant for infringing use of her artwork in a brochure at defendant's auto show. *Id.* at 965. However, the Olen Parties gloss over the rationale behind that holding. The *Rainey* Court did not address the extent plaintiff's work played in the infringing act, as the Olen Parties imply. Instead, it focused its discussion on the lack of evidence of the link between infringement and profit, noting that the plaintiff "failed to introduce **any** facts by which a reasonable nonspeculative

formula could be used to award profit damages. *Id.* at 971 (emphasis added); *see also Del Amo v. Baccash*, 2008 WL 2780978, No. CV 07-663 PSG (JWJx) (C.D. Cal. 2008) (precluding claim on indirect damages where plaintiff presented no evidence of a causal link, submitted no expert testimony and instead "merely provided argument").

Once again, that is not the case here. Wakefield provided far more sufficient and reliable data, which the District Court should have let the jury assess. Wakefield presented specific evidence of revenue from sources directly linked to the Olen Parties' infringement. (E.R. 203-206, 210-211, 219, 315-321). Wakefield sought an award based only on rental revenue from two of the locations at which infringing sculptures are located. (E.R. 315-321). Notably, Wakefield did not seek indirect profits from Olen Headquarters, where two infringing sculptures are featured, because that property does not collect rent. (E.R. 315-321). Rosenfeld's report stated that there are several, objective factors which determine the rental amounts certain properties can command, including the presence of sculpture. This point is bolstered by the Olen Parties' own advertisement of the infringing works. Based on these objective standards, Wakefield's expert opined that the display of the infringing works contributed to the rental revenue of the properties that feature them.

The District Court should have allowed the jury to determine this issue. For summary judgment purposes, where Wakefield was entitled to all inferences in his favor, it was ample to create an issue of fact on his claim for indirect damages.

### 2. The Olen Parties' "brand prestige" argument is erroneous.

The Olen Parties attempt to distort Wakefield's indirect damage claims into one for "brand prestige," which they claim are therefore not recoverable under *Polar Bear*. Wakefield makes no claim for brand prestige, nor does he seek overall profits from the Olen Parties' properties where the pieces are not displayed. As noted in Wakefield's First Brief, the *Polar Bear* holding was limited to a finding on a plaintiff's claim for enhancement of defendant's brand. In *Polar Bear*, the plaintiff sought recovery for increased revenue from the sale of defendant's watches resulting from the brand's association with extreme kayaking. Wakefield's claim is far less attenuated. His evidence – Rosenfeld's report and the Olen Parties' own website – provided a direct causal link between the presence of the infringing works and rental revenue at the specific properties where they are displayed.

Wakefield's claim more closely resembles the award successfully obtained by the *Polar Bear* plaintiff for sales made at the trade show where the infringing work was being displayed. In evaluating this claim for indirect profits, the *Polar Bear* Court found plaintiff's expert testimony **was sufficient** to establish the

requisite casual connection between trade booth sales and the infringement. This is nearly identical to the evidence provided by Wakefield – expert testimony linking specific profits to contemporaneous infringement.

## IV.    CONCLUSION

For the reasons stated in his First and Third Briefs, Wakefield respectfully requests that this Court: (1) reverse the District Court's Order granting in part the Olen Parties' Motion for Judgment as a Matter of Law and remand to the District Court for reinstatement of the $450,000 jury verdict; (2) reverse the District Court's Order partially granting the Olen Parties' Motion for Summary Judgment, remanding for trial on Wakefield's claims regarding the copy he discovered in 2008 and on his claim for indirect damages; (3) affirm the District Court's denial of the Olen Parties' Motion for Judgment as a Matter of Law as to the statute of limitations regarding the copies Wakefield discovered after 2008; and (4) affirm the District Court's judgment of mandatory permanent injunction requiring that all infringing copies of *Untitled* be destroyed.

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the requirements of Federal Rule of Appellate Procedure, Rule 32(a)(7)(C) and Circuit Court Rules 28-1 and 32-1. The brief is proportionately spaced in Times New Roman 14-point type. According to the word processing system used to prepare the Brief, the word count of the Brief is 10,762 words, not including, the Table of Contents, Table of Authorities and Certificate of Service.

Dated: April 13, 2016

/s/ *Gene J. Brockland*
Gene J. Brockland

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2016, I electronically filed the foregoing Third Brief on Cross-Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 13, 2016.

I certify that all participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated:  April 13, 2016.


/s/ *Gene J. Brockland*
Gene J. Brockland


p:\11500\11550\appeal\pleadings\reply brief\third brief on cross appeal - final - 4-13-16.docx